## APPEAL OF JAMES W. FULLER, JR.

Docket No. 3068.    Promulgated May 20, 1927.

BOND DIVIDEND.—On April 24, 1918, the petitioner was the sole stockholder of a corporation, and on that day the corporation declared, and he received, a bond dividend chargeable against corporate surplus and undivided profits in the amount of $600,000. He immediately sold the entire bond issue for $468,000. *Held,* that he realized taxable gain in the amount of the surplus and undivided profits accumulated after February 28, 1913, less the loss on the sale of the bonds.

*J. Harry Covington, Esq.,* and *Spencer Gordon, Esq.,* for the petitioner.

*T. P. Dudley, Jr., Esq.,* for the Commissioner.

This is an appeal from the determination of a deficiency in income tax for the year 1918 in the sum of $137,818.57. The deficiency arose from a ruling by the Commissioner that a certain sum of $249,857.77 constituted taxable income to the petitioner for the year 1918. The said sum represented the market value of a bond dividend from an accumulation of surplus since March 1, 1913, by the Fuller-Lehigh Co., a corporation. The facts are not in dispute.

### FINDINGS OF FACT.

The Lehigh Car Wheel & Axle Works was incorporated in 1901 under the laws of the Commonwealth of Pennsylvania, for the principal purpose of manufacturing articles made of iron and steel, with its general office, works, and property at Fullerton, Lehigh County, Pa. For many years many of its specialties were marketed under the brand "Fuller-Lehigh," which became a valuable trade name.

Immediately prior to the transactions herein described, its authorized and outstanding capital stock consisted of 3,000 shares of the par value of $100 each, aggregating in amount $300,000 then held and owned as follows:

| | |
|---|---|
| J. W. Fuller, Jr., the taxpayer | 537½ |
| Mary L. McCaskey, his sister | 487½ |
| Blanche T. Salade, his sister | 487½ |
| Maude M. Elverson, his sister | 487½ |
| Warren A. Wilbur | 1,000 |
| Total | 3,000 |

On or about February 2, 1918, Warren A. Wilbur gave the taxpayer, J. W. Fuller, Jr., an option on his 1,000 shares at $250 per share, totaling $250,000, for which the taxpayer gave Warren A. Wilbur $10,000 ($5,000 in cash and $5,000 in a note). After this option had been given, Mary L. McCaskey, Blanche T. Salade and Maude M. Elverson agreed to sell their stock to the taxpayer for the same price, 1,462½ shares at $250 a share, totaling $365,625. The total purchase price to be paid by the taxpayer for all of the stock was therefore $615,625.

In order to finance the proposed purchase of the stock, the taxpayer applied to the Subcommittee on Capital Issues of the Philadelphia Federal Reserve District for authority to issue $600,000 first mortgage bonds of the Lehigh Car Wheel & Axle Works, and on or about March 18, 1918, permission was granted by said subcommittee, provided that the money received by the other stockholders of the Lehigh Car Wheel & Axle Works for the sale of their interest would be invested in Government bonds with an agreement that they would not sell these Government bonds for two years.

In order to carry out the transaction in accordance with the permission granted by the Subcommittee on Capital Issues, on or about March 20, 1918, Warren A. Wilbur agreed in writing that he would accept for his stock, in lieu of cash $240,000 in United States Liberty bonds, with the understanding that he would not sell these bonds for a period of two years from April 1, 1918 (the $10,000 already received under the option making the total purchase price of $250,-000). In further pursuance of the same plan, the other three stock-

holders, Mary L. McCaskey, Blanche T. Salade and Maude M. Elverson, on or about March 27, 1918, agreed in writing to sell their stock in the Lehigh Car Wheel & Axle Works to J. W. Fuller, Jr., the taxpayer, for $365,625, payable $30,000 in cash, $107,625 in notes secured by certain stock in other companies owned by the taxpayer, and $228,000 in Liberty bonds which were to be held by the Lehigh Valley Trust Co. in trust for the sellers for a period of two years.

Meanwhile, the taxpayer had entered into an agreement with two bond houses, Frazier & Co., and Cassatt & Co., whereby the name of the Lehigh Car Wheel & Axle Works was to be changed to Fuller-Lehigh Co., and the underwriting firms were to purchase $600,000 par value bonds of said company for $468,000 in cash which was to be used in purchasing Liberty bonds for the purpose of carrying out the taxpayer's agreement with the other stockholders, $240,000 to Wilbur and $228,000 to the other three stockholders.

These agreements were carried out as follows: J. W. Fuller, Jr., gave preliminary personal notes for $240,000 dated April 1, 1918; $120,000 to Frazier & Co., and $120,000 to Cassatt & Co. Frazier & Co., and Cassatt & Co., turned over $240,000 to Warren A. Wilbur in payment for the shares of stock which said Wilbur had agreed to transfer to the taxpayer, and Warren A. Wilbur purchased Liberty bonds therewith. Warren A. Wilbur thereupon, on April 1, 1918, assigned his 1,000 shares of the Lehigh Car Wheel & Axle Works to J. W. Fuller, Jr., who had two new certificates issued in his own name for 768½ shares and 767 shares and in the name of R. S. Weaver and J. S. Elverson for one share each, and gave certificates for 768½ shares to Frazier & Co., and for 769 shares to Cassatt & Co., as collateral. (These certificates totaled 1,537½ shares, representing the 537½ shares originally held by Fuller and the 1,000 shares assigned by Wilbur.) On April 1, 1918, the other three stockholders, Mary L. McCaskey, Blanche T. Salade and Maude M. Elverson, assigned their stock to J. W. Fuller, Jr., April 1, 1918; J. W. Fuller gave his three notes for $10,000 each to Mary L. McCaskey, Blanche T. Salade, and Maude M. Elverson, payable May 1, 1918, in place of the $30,000 cash contemplated by his contract with them, and gave his notes totaling $30,000 due September 1, 1918, and $77,625 due April 1, 1922, as contemplated by said contract. April 24, 1918, the Lehigh Car Wheel & Axle Works declared a dividend of $600,000 payable in first mortgage bonds to J. W. Fuller, Jr., who was then the holder of the entire 3,000 shares of stock of that company. April 25, 1918, the name of the Lehigh Car Wheel & Axle Works was changed to Fuller-Lehigh Co. April 30, 1918, J. W. Fuller Jr. made a settlement with Frazier & Co., and Cassatt & Co., whereby he delivered bonds of the Fuller-Lehigh Co. totaling

$600,000 and received therefor his canceled notes totaling $240,000 and collateral, referred to in this paragraph, and credit for $288,000 which was invested by Frazier & Co., and Cassatt & Co., in Liberty bonds. Said Liberty bonds were delivered by Frazier & Co., and Cassatt & Co., to the Lehigh Valley Trust Co., in performance of the agreement of March 27, 1918, between J. W. Fuller, Jr., and Mary L. McCaskey, Blanche T. Salade and Maude M. Elverson. May 1, 1918, J. W. Fuller, Jr., paid $30,000 in cash to Mary L. McCaskey, Blanche T. Salade and Maude M. Elverson, in payment of the three notes for $10,000 each dated April 1, 1918, all pursuant to the agreement of March 27, 1918, thus completing the purchase of the stock.

The petitioner did not include as part of his income for the year 1918 any sum representing the bond distribution of April 24, 1918. The fair market value of the said dividend of bonds of $600,000 on April 24, 1918, was $468,000, or 78 per cent of the par thereof. At the time of the declaration of said bond dividend the surplus and undivided profits of said corporation accumulated since February 28, 1913, amounted to $320,330.48, and the amount of the bond dividend at the valuation of 78 per cent of par apportioned to the surplus and profits accumulated since February 28, 1913, was $249,857.77. By increasing the petitioner's income to the extent of $249,857.77, the Commissioner had found that additional taxes were due for the year 1918 in the sum of $137,818.57. If the bond distribution of April 24, 1918, does not constitute taxable income to the petitioner there is no additional tax due for the year 1918.

### OPINION.

TRUSSELL: In *Doerschuck* v. *United States*, 274 Fed. 739, the court had before it a situation in which it found the essential facts to be:

* * * The directors of said corporation had voted an issue of $738,000 of debenture bonds from a surplus or undivided profits amounting to $840,368.09, which had accrued between 1906 and July 1, 1916. The portion of the bonds representing surplus earned before March 1, 1913, was not taxed and hence is not involved in these actions. The balance, viz. $262,334.44, was assessed as income for the year 1916, during which year each of the plaintiffs had received his one-quarter part of said funds.

Commenting upon these facts the court cited and discussed a number of authorities relating to the nature and kind of dividends such as stock, bond, and scrip dividends, and then said:

It is apparent, therefore, in the present case, that the plaintiffs received an actual payment (in the form of securities available for disposition in the market, and entirely severed or distinguished from their control of the property as stockholders) of profits which the company wished to distribute as earnings to its stockholders. It did this by distribution of obligations which, like a promissory note, called for the payment of cash, and did not invest the holder with merely a different form of holding of stock.

There is no question here between the persons receiving this dividend and creditors as to priority of payment. Evidently, so far as these debenture bonds are concerned, the corporation was solvent, and to whatever extent they might be of value this value was separated from any stockholders' control of the corporation. As stated in *Eisner* v. *Macomber, supra*, 252 U. S. at page 212, 40 Sup. Ct. at page 195, 64 L. Ed. 521, 9 A. L. R. 1570:

"It is said that a stockholder may sell the new shares acquired in the stock dividend; and so he may, if he can find a buyer. It is equally true that, if he does sell, and in doing so realizes a profit, such profit, like any other, is income, and, so far as it may have arisen since the Sixteenth Amendment, is taxable by Congress without apportionment."

The debenture bonds in the suit at bar fall into the class of stock sold rather than stock held in a continued status of shareholder.

Petitioner's counsel in his brief, appears to admit that income may be realized from bond dividends as in the case above cited, but urges that under the peculiar circumstances of the instant case the petitioner should not be charged with having received taxable income. Counsel has cited some authorities which we have examined but which to our mind do not lend any compelling force to his argument. It will be observed that in the *Doerschuck* case *supra*, the court did not hold that taxable income was realized from the issue and receipt of the bond dividend but that taxable income was received from the sale of such dividend and that is the case which we have here under consideration. The petitioner received bonds representing $600,000 of the surplus and undivided profits of his corporation. That portion of the bond issue representing the $320,330.48 of surplus and undivided profits accumulated since February 28, 1913, should be added to the petitioner's gross income as dividend subject to surtax. The loss, in the amount of $132,000 sustained in the sale of the bond issue should be treated as a deduction from the petitioner's gross income and his income-tax liability for the year recomputed after such changes have been made.

> *The deficiency may be redetermined in accordance with the foregoing opinion upon 15 days' notice, pursuant to Rule 50, and judgment will be entered in due course.*